UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHRYN TOWNSEND, *et.al.*,

    Plaintiffs,

vs.                                     CASE NO: 1:16-CV-06309-RJS/GRIFFIN

EDWARD CHRISTOPHER SHEERAN,
*et.al.*,

    Defendants.
_____/

## PLAINTIFFS' RESPONSE TO THE COURT'S ORDER OF JANUARY 23, 2017

**COMES NOW**, the Plaintiffs, collectively, who, by and through their undersigned counsel(s), provide the following Response to the Court's Order of January 23, 2017:

1. The Court has directed that the Plaintiffs respond to a letter Motion generated by Ms. Ilene Farkas regarding communications and/or interaction between respective counsel(s) for the parties at issue herein, as well as efforts undertaken by the Plaintiffs to serve the Defendants named in the instant lawsuit. The Plaintiff respond as follows:

## BACKGROUND

2. Prior to the inception of the instant lawsuit, the undersigned counsel(s), in conjunction with co-counsel(s), had contacted the Defendant, Sony/ATV, for the purpose of attempting to effectuate a pre-suit settlement attendant to this matter.

3. The rationale at the time was that, given the blatancy and/or fundamental egregiousness of the copyright infringement at issue herein and the common industry knowledge as to the overt and/or obvious nature of the same,[1] it was believed that the parties herein would

---

[1] By way of illustration, there exists on YouTube a video of the Defendant, Mr. Edward Christopher Sheeran, playing a concert in which he begins by playing his song, "Thinking Out Loud", then proceeds to seamlessly segue into "Let's Get It On"; the popular group BoyztoMen has played live in concert a medley in which they

1

likely be willing to discuss the prospect of an amicable and/or expedited pre-suit settlement.

4. Through representatives of Sony/ATV, the Plaintiffs were referred to the partner of Ms. Ilene Farkas, a Mr. Donald Zakarin, whom the Plaintiffs were told was allegedly going to be representing all material parties to the matter.

5. At first, the initial discussions, which commenced in or about the Fall of 2015, seemed promising. Unfortunately, the promise of fruitful discussions began to quickly dissipate when—what were believed to be—grave misrepresentations regarding the revenue for the infringing song were made and both Ms. Farkas and Mr. Zakarin withdrew and/or reneged upon previous pledges/promises to provide documentation to support the revenue claims of concern.[2]

6. Without the ability to evaluate the equitable nature of any prospective settlement without any documentary evidence of song revenues, the Plaintiffs, via counsel(s), had no choice but to withdraw from negotiations with Mr. Zakarin and Ms. Farkas.

7. On or about February 17, 2016, a request was made via electronic mail to Mr. Zakarin as to whether, since he allegedly was representing all parties to any prospective action, he would accept service of process. On or about February 17, 2016, Mr. Zakarin responded via electronic mail that whether or not he would accept service of process was contingent upon a preliminary review of the complaint. To the best of Plaintiffs' knowledge, there has been no communication with Mr. Zakarin, nor Ms. Farkas, on behalf of the Plaintiffs since that time other than a second, follow-up, request for Mr. Zakarin to accept service of process in

---

perform similarly to the Defendant, Mr. Sheeran, by seguing from one (1) song into the other; by way of addendum, the popular singer Mr. Michael Buble performed a medley in a sound check in which he, too, performed a medley involving seguing from one (1) song to another to which the Defendant, Mr. Sheeran, responded on social media his approval; finally, following the verdict in the much-ballyhooed "Blurred Lines" case, the Spin Magazine published an article alleging that the Defendant's infringement of "Let's Get it On" was even more blatant than the "Blurred Lines" matter.

[2] In essence, Plaintiffs were being asked to negotiate a settlement based on Defendants' counsels' proverbial 'word' without being afforded an opportunity to exercise reasonable due diligence *vis a vis* the provision of documentation verifying the same.

November of 2016, following the Order of this Court, which will be discussed at further length below.

### QUESTION ONE (1)— ACTIONS TAKEN IN FURTHERANCE OF SERVICE BETWEEN AUGUST AND NOVEMBER OF 2016

8. In the Plaintiffs' document entitled "Response to Court Order of November 17, 2016", the Plaintiffs stated that they had "effectuated due diligence in attempting to secure all of the correct/accurate addresses of various registered agents for all of the individuals and/or entities involved". The Plaintiffs stand by the accuracy of that representation and, specifically, take exception with Ms. Farkas' suggestion as to purported lack of candor and/or attempts to mislead.

9. To wit, as the Plaintiffs previously stated, between August of 2016 and November of 2016, the Plaintiffs were attempting to secure service addresses for the various Defendants. Although this might appear to be a relatively pedestrian task, the Plaintiffs had three (3) separate attorneys researching this issue. Notwithstanding the fact that the majority of the Defendants attendant to this action are situated abroad, the various entities located within the United States have various operating addresses in as many as four (4) separate states.

10. Given that there was ongoing litigation against the instant Defendant, Mr. Sheeran, in the State of California, the Plaintiffs undertook research via the Pacer database to determine where Mr. Sheeran was served in the other federal copyright infringement litigation against the same in connection with a separate song—in connection with that inquiry, we found that Mr. Zakarin (Ms. Farkas' partner referenced in the letter/motion to which this pleading is directed) had signed and filed a waiver of service apparently on behalf of all Defendants in that case and, accordingly, we were not able to locate serviceable addresses

due to said waiver.

11. Still further, additional rigorous Pacer database research was undertaken with respect to other cases in which the named Defendants had been served—in each of the cases that were reviewed, it appeared that service was repeatedly waived, thereby abrogating the necessity of filing summonses with valid addresses to utilize in connection with this matter.

12. Upon receipt of the Court's previous Order in November of 2016, the Plaintiffs' counsel, Ms. Keisha D. Rice, in order to facilitate potential expedited resolution of the service issue, sent an Electronic Mail to Mr. Zakarin in November of 2016 inquiring as to whether or not service would be accepted.[3]

13. Mr. Zakarin responded via Electronic Mail with an inexplicable and lengthy screed during which, combined with various acrimonious comments and threats, ultimately declined to accept service.

14. Thereafter, the Plaintiffs responded to the Court's Order of November of 2016, indicating <u>exactly</u> what has been set forth herein—a diligent attempt to secure service addresses in conjunction with an attempt to secure waiver of service through Mr. Zakarin which, as chronicled herein, was summarily declined.

**QUESTION TWO (2)--
ACTIONS TAKEN IN FURTHERANCE OF
SERVICE OF PROCESS BETWEEN NOVEMBER OF
2016 AND JANUARY OF 2017**

17. Following the Court's Order establishing good cause for an extension, utilizing the best addresses that were available at the time, the Plaintiffs retained the services of Process Service of America, Inc., in Tallahassee, Florida which, subsequently, retained local servers

---

[3] **It was presumed at that point, given that the document was a public record, Mr. Zakarin would have had a chance to review the same per his earlier request.**

in New York and Tennessee in an effort to serve Warner Music Group Corporation, *d/b/a* Asylum Records, Warner Music Group (Ltd) (UK), Atlantic Recording Corporation, *d/b/a* Atlantic Records, and Sony/ATV Music Publishing, LTD (UK).

18. Service was timely secured for Warner Music Group Corporation, *d/b/a* Asylum Records, and Atlantic Recording Corporation, *d/b/a* Atlantic Records. Attempts to serve Warner Music Group (Ltd) (UK) were refused apparently as, per the process servers, the registered agent at issue claimed that he/she was only empowered to accept on behalf of "Warner Music Group Corporation".

19. With respect to Sony/ATV Music Publishing, LTD (UK), per the affidavit of service of process sent to the undersigned counsel(s)' office, and as demonstrated via Court filing, the service upon the same was perfected.[4] Although, subsequently, and in the interest of full candor to the Court, this office has since received a letter from Sony/ATV within the last day that is now claiming that service was not valid, despite the previous acceptance of the same.

20. With regard to the internationally-based Defendants, at considerable cost this office retained the services of a process service company named "Foss, Baker" based out of Atlanta, Georgia that purportedly specializes in service of process—Foss, Baker counseled the Plaintiffs as to the protocols associated with having the Defendants served pursuant to the Hague Convention. However, the projected time frame for the service of process to be domesticated and served pursuant to the Hague Convention procedures was projected at approximately four (4) months.

21. The four (4) month projection would have taken well beyond the January 20, 2017 deadline set by the Court. Therefore, upon being advised that, alternatively, hand-

---

[4] **The affidavit verifying service is the first page of Exhibit "A" of Notice of Filing Returns of Service.**

service could be effectuated within ten (10) calendar days personally upon the Defendants, the Plaintiffs paid to have Defendants, Mr. Sheeran, Ms. Wadge, and Mr. Gosling personally served.

22. Unfortunately, despite repeated attempts to date, the process servers have been unsuccessful in securing service on those individual Defendants to date—the Plaintiffs have been given various reasons for the delay or the inability to finalize service including, but not limited to, the fact that service was attempted during the holiday season, in conjunction with the claim that the Defendant, Mr. Gosling, is allegedly out of the country in South Africa currently.

23. Thus, in order to demonstrate the Plaintiffs' attempts at compliance with the Court's deadline of January 20, 2017, the returns that were available at that time were filed.

### QUESTION THREE (3)— WHO HAS BEEN SERVED

24. Plaintiffs have, to date, successfully served Atlantic and Asylum Records, respectively. Although the Plaintiffs believe that the previous acceptance of service by Sony/ATV Publishing constitutes a waiver to any prospective objection to the validity of process—herein again—in the interest of full candor, the Defendant, Sony/ATV has sent correspondence subsequently claiming that the service was not valid.

### QUESTION FOUR (4)— WHY THE ACTION SHOULD NOT BE DISMISSED FOR FAILURE TO TIMELY SERVE ALL PARTIES

25. The Plaintiffs would, unequivocally, concede that the Court has it within its discretionary powers to dismiss the instant action without prejudice based on the failure to finalize/complete service on all named parties.

26. However, the Plaintiffs would, respectfully, request that the Court does not due so for several reasons—first, the Defendants to this action have not, nor will they, be prejudiced by the delay in service, nor could any Defendant plausibly claim as much.

27. As discussed herein above, it appears from researching the other federal copyright infringement lawsuit involving the Defendant, Mr. Sheeran, and—indeed—other similarly-styled lawsuits that the protocol and/or custom appears to be to waive service of process given the scope and disparate geographical breadth of the various Defendants.

28. It is not immediately clear why similar courtesies and/or a pragmatic approach to moving forward has not been elected herein which would facilitate moving the matter forward toward litigating the merits of the litigation. Nevertheless, while the Defendants are certainly within their rights to command formal service of process, the Plaintiffs would, respectfully, submit that the apparent unique and/or divergent protocol being availed of herein is the principal reason for the unusual delay at this juncture comparative to similar cases. The Plaintiffs are ready, willing, and able to proceed with service of process by and through whatever means necessary for the internationally-based Defendants.

### QUESTION FIVE (5)— WHY THE CASE SHOULD NOT BE STAYED PENDING SERVICE ON ALL PARTIES

29. The Plaintiffs would, respectfully, contend that they have absolutely no objection to a stay pending service on all parties. It is believed that this would be the most economic and/or efficient manner in which to proceed so as to avoid the undue expenditure of the Court's time and resources.

8

Respectfully Submitted:

/s/ Patrick R. Frank, Esq.
Patrick R. Frank, Esq.
Fla. Bar No. 642770
Keisha D. Rice, Esq.
Katherine L. Viker, Esq.
Frank & Rice, P.A.
325 W. Park Avenue
Tallahassee FL 32301
Telephone:  (850) 629-4168
Facsimile:  (850) 629-4184
Attorney(s) for Plaintiffs

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was conveyed via Electronic Mail to Ms. Ilene Farkas, Esq., on this 25th day of January, 2017.

/s/ Patrick R. Frank, Esq.
Patrick R. Frank, Esq.